# EXHIBIT

The Washington Post

**Politics**

# Stone associate Jerome Corsi is in plea negotiations with special counsel, according to a person with knowledge of the talks



**The Washington Post**

## Our journalism keeps watch on Washington and the world.

**Try 1 month for ~~$10~~ $1**

**Send me this offer**

By Rosalind S. Helderman ,
Josh Dawsey and
Manuel Roig-Franzia
November 23 at 12:00 PM

Conservative writer and conspiracy theorist Jerome Corsi is in plea negotiations with special counsel Robert S. Mueller III, according to a person with knowledge of the talks.

The talks with Corsi — an associate of both President Trump and GOP operative Roger Stone — could bring Mueller's team closer to determining whether Trump or his advisers were linked to WikiLeaks' release of hacked Democratic emails in 2016, a key part of his long-running inquiry.

Corsi provided research on Democratic figures during the campaign to Stone, a longtime Trump adviser. For months, the special counsel has been scrutinizing Stone's activities in an effort to determine whether he coordinated with WikiLeaks. Stone and WikiLeaks have repeatedly denied any such coordination.

Stone has said that Corsi also has a relationship with Trump, built on their shared interest in the falsehood that President Barack Obama was not born in the United States.

David Gray, an attorney for Corsi, declined to comment, as did

a spokesman for Mueller. Stone declined to comment on
Corsi's plea negotiations. An attorney for Trump declined to
comment.

The deal is not yet complete and could still be derailed. Last
week, Corsi said his efforts to cooperate with prosecutors had
broken down and that he expected to be indicted on a charge of
allegedly lying. He described feeling under enormous pressure
from Mueller and assured his supporters that he remains
supportive of the president.

In a webcast and a series of interviews, Corsi said he had
spoken to prosecutors for 40 hours and feared that he could
spend much of the remainder of his life in prison.

After two months of interviews, Corsi, 72, said he felt his brain
was "mush."

"Trying to explain yourself to these people is impossible . . . I
guess I couldn't tell the special prosecutor what he wanted to
hear," he added.

At that time, he gave no indication that he intended to plead
guilty, instead casting himself as an unfairly targeted victim of
a Mueller campaign against Trump.

Then, Corsi abruptly fell silent, canceling a scheduled Nov. 13
interview with NBC. Gray, his attorney, told NBC that he had
just spoken to the special counsel's office and had advised
Corsi to cancel.

Since then, Corsi has resumed talks with Mueller's team about
a possible deal that could result in him agreeing to plead guilty

in exchange for leniency, according to the person familiar with the situation.

It is not clear what information Corsi could leverage to get a deal with prosecutors. However, he told the Daily Caller last week that prosecutors are focused on whether he had developed a source with inside information about WikiLeaks founder Julian Assange's plans.

Corsi said he did not have a direct source to the group. Instead, he said he developed a theory that Assange had access to hacked emails belonging to Hillary Clinton campaign chairman John Podesta and that WikiLeaks would release them in October 2016.

He told the Daily Caller that he shared his prediction with many people, including Stone.

If Mueller could prove that Corsi learned about Podesta's emails from Assange or another person in contact with him, he could try to link WikiLeaks' releases to Stone or others in Trump's world.

Stone told the publication that Corsi never relayed such information.

"He never told me that he had figured out or believed that John Podesta's emails had been stolen," Stone said.

On Aug. 21, 2016, Stone tweeted "it will soon the Podesta's time in the barrel." He has insisted his tweet had nothing to do with any plan by WikiLeaks and that it was based on research Corsi had provided to him about work Podesta and his lobbyist

brother Tony had done involving Russia.

"He simply told me of their Russian business deals in banking gas and uranium," Stone said in a text message this week to The Washington Post. "There was NO WikiLeaks context."

Stone told the House Intelligence Committee in September 2017 that his Podesta tweet was "based on a comprehensive, early August opposition research briefing provided to me by investigative journalist, Dr. Jerome Corsi, which I then asked him to memorialize in a memo that he sent me on August 31st, all of which was culled from public records. There was no need to have John Podesta's email to learn that he and his presidential candidate were in bed with the clique around Putin."

Stone has since said that the information in the Aug. 31 memo — which he received 10 days after his now-infamous tweet — was similar to information that Corsi had relayed to him verbally before the tweet.

The prediction that Corsi said he made that Assange would publish Podesta's emails was correct: on Oct. 7, 2016, WikiLeaks began publishing 50,000 emails stolen from Podesta's account, releasing them in batches of a few thousand at a time each day leading up to the November election.

Corsi told the Daily Caller that he based his prediction on public sources of information, including the fact that Podesta was not among the Democrats whose emails had been published by WikiLeaks when the group released Democratic National Committee correspondence in July.

He said he concluded that WikiLeaks must be holding back Podesta's correspondence to make a bigger splash later in the campaign.

Podesta did not work for the DNC and the emails were stolen from his private Gmail account, not an address linked to the Democratic Party.

Corsi told the Daily Caller that Mueller's prosecutors did not believe his explanation and pressed him to name his WikiLeaks source. They were especially interested, he said, in a trip he took to Italy with his wife that he said coincided with his realization about the Podesta emails.

"They said they wanted me to tell the truth, but when I did tell the truth they told me it was preposterous, and they wouldn't accept it," Corsi said.

Stone is under scrutiny because he made a series of comments during the campaign that suggested he was in contact with Assange and knew of WikiLeaks' plans.

Since then, Stone has vigorously contended that his comments were exaggerations based on public information, as well as tips from New York radio host and comedian Randy Credico.

Stone has also told The Post that Corsi had a relationship with Trump and spoke directly with the Republican candidate during the campaign.

Stone said the two men became friendly after Corsi published a book in 2011 advancing the false theory that Obama was not qualified to hold office because he was not born in the United

States. Trump became a leading proponent of that falsehood.



**Josh Dawsey**

Josh Dawsey is a White House reporter for The Washington
Post. He joined the paper in 2017. He previously covered
the White House for Politico, and New York City Hall and
New Jersey Gov. Chris Christie for the Wall Street Journal.
Follow 🐦



**Manuel Roig-Franzia**

Manuel Roig-Franzia is a feature writer in The Washington
Post's Style section, where he profiles national figures in
the worlds of politics, the law and the arts. He previously
served as bureau chief in Miami for The Post's National
staff and in Mexico City for the Post's Foreign staff. He is
the author of a biography of Sen. Marco Rubio. Follow 🐦

**The Washington Post**

# The story must be told.

Your subscription supports journalism that matters.

**Try 1 month for $1**



**U.S. Department of Justice**

*The Special Counsel's Office*

*Washington, D.C. 20530*

November __, 2018

David E. Gray, Esq.
Gray Law Group
760 Route 10 West, Suite 204
Whippany, New Jersey 07981

Re:    United States v. Jerome Corsi

Dear Mr. Gray:

This letter sets forth the full and complete plea offer to your client, Jerome Corsi (hereinafter referred to as "your client" or "defendant"), from the Special Counsel's Office (hereinafter also referred to as "the Government" or "this Office"). If your client accepts the terms and conditions of this offer, please have your client execute this document in the space provided below. Upon receipt of the executed document, this letter will become the Plea Agreement (hereinafter referred to as "this Agreement"). The terms of the offer are as follows:

## 1.    Charges and Statutory Penalties

Your client agrees to waive indictment and plead guilty to a Criminal Information, a copy of which is attached, charging your client with making false statements to the Special Counsel's Office and to the Federal Bureau of Investigation, in violation of 18 U.S.C. § 1001(a)(2)**.**

Your client understands that a violation of 18 U.S.C. § 1001 carries a maximum sentence of 5 years' imprisonment; a fine of $250,000, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

In addition, your client agrees to pay a special assessment of $100 per felony conviction to the Clerk of the United States District Court for the District of Columbia. Your client also understands that, pursuant to 18 U.S.C. § 3572 and § 5E1.2 of the United States Sentencing Commission, *Guidelines Manual* (2017) (hereinafter "Sentencing Guidelines," "Guidelines," or "U.S.S.G."), the Court may also impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release, and period of probation.

## 2.    Plea

Your client understands and acknowledges that this Agreement and any plea of guilty which your client may enter pursuant to this Agreement are contingent upon the entry of a guilty plea by the defendant in this case. If your client fails to enter a guilty plea, this Agreement and

any proceedings pursuant to this Agreement may be withdrawn or voided in whole or in part at the option of this Office.

**3.      Factual Stipulations**

Your client agrees that the attached "Statement of the Offense" fairly and accurately describes your client's actions and involvement in the offense to which your client is pleading guilty.  Please have your client sign and return the Statement of the Offense as a written proffer of evidence, along with this Agreement.

**4.      Additional Charges**

In consideration of your client's guilty plea to the above offense, your client will not be further prosecuted criminally by this Office for the conduct set forth in the attached Statement of the Offense; for any other false statements made by him to this Office or to the grand jury between September 6, 2018 and November 2, 2018; and for obstructing, aiding or abetting in the obstruction of, or conspiring to obstruct or commit perjury before congressional or grand jury investigations in connection with the conduct described in the Statement of Offense.

**5.      Sentencing Guidelines Analysis**

Your client understands that the sentence in this case will be determined by the Court, pursuant to the factors set forth in 18 U.S.C. § 3553(a), including a consideration of the applicable guidelines and policies set forth in the Sentencing Guidelines.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and to assist the Court in determining the appropriate sentence, the parties agree to the following:

**A.      Estimated Offense Level Under the Guidelines**

The parties agree that the following Sentencing Guidelines sections apply:

| U.S.S.G. §2B1.1(a)(2) | Base Offense Level: | 6 |
|---|---|---|
| | Total: | 6 |

**B.      Acceptance of Responsibility**

The Government agrees that a 2-level reduction will be appropriate, pursuant to U.S.S.G. § 3E1.1, provided that your client clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through your client's allocution, adherence to every provision of this Agreement, and conduct between entry of the plea and imposition of sentence.

Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, and/or imposition of an adjustment for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, regardless of any agreement set forth above, should your client move to withdraw your client's guilty plea after it

is entered, or should it be determined by the Government that your client has either (a) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice, (b) engaged in additional criminal conduct after signing this Agreement, or (c) taken any other action inconsistent with acceptance of responsibility.

In accordance with the above, the applicable Guidelines Offense Level will be at least **4**.

## C.   Estimated Criminal History Category

Based upon the information now available to this Office, your client has no criminal convictions.

Accordingly, your client is estimated to have zero criminal history points and your client's Criminal History Category is estimated to be I.  Your client acknowledges that if additional convictions are discovered during the pre-sentence investigation by the United States Probation Office, your client's criminal history points may increase.

## D.   Estimated Applicable Guidelines Range

Based upon the agreed total offense level and the estimated criminal history category set forth above, your client's estimated Sentencing Guidelines range is zero months to six months' imprisonment (the "Estimated Guidelines Range").  In addition, the parties agree that, pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 4, the estimated applicable fine range is $500 to $9,500.  Your client reserves the right to ask the Court not to impose any applicable fine.

The parties agree that, solely for the purposes of calculating the applicable range under the Sentencing Guidelines, neither a downward nor upward departure from the Estimated Guidelines Range set forth above is warranted.  Accordingly, neither party will seek any departure or adjustment to the Estimated Guidelines Range, nor will either party suggest that the Court consider such a departure or adjustment, except as provided above.  Moreover, your client understands and acknowledges that the Estimated Guidelines Range agreed to by the parties is not binding on the Probation Office or the Court.  Should the Court determine that a different guidelines range is applicable, your client will not be permitted to withdraw your client's guilty plea on that basis, and the Government and your client will still be bound by this Agreement.

Your client understands and acknowledges that the terms of this section apply only to conduct that occurred before the execution of this Agreement.  Should your client commit any conduct after the execution of this Agreement that would form the basis for an increase in your client's base offense level or justify an upward departure (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the probation officer, or the Court), the Government is free under this Agreement to seek an increase in the base offense level based on that post-agreement conduct.

## 6.   <u>Agreement as to Sentencing Allocution</u>

Based upon the information known to the Government at the time of the signing of this Agreement, the parties further agree that a sentence within the Estimated Guidelines Range would constitute a reasonable sentence in light of all of the factors set forth in 18 U.S.C. § 3553(a), should such a sentence be subject to appellate review notwithstanding the appeal waiver provided below.

Provided the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, as set forth above, the Government will seek a sentence within the Estimated Guidelines Range and will not oppose your client's request for a sentence of probation.

### 7.   **Reservation of Allocution**

The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty.

The Government agrees to bring to the Court's attention at sentencing the defendant's efforts to cooperate with the Government, on the condition that your client continues to respond and provide information regarding any and all matters as to which the Government deems relevant. Your client also agrees that the sentencing in this case may be delayed until the Government's ongoing investigation has been completed, as determined by the Government, so that the Court will have the benefit of all relevant information before a sentence is imposed.

The parties also reserve the right to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement. In the event that the Court considers any Sentencing Guidelines adjustments, departures, or calculations different from any agreements contained in this Agreement, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), the parties reserve the right to answer any related inquiries from the Court. In addition, if in this Agreement the parties have agreed to recommend or refrain from recommending to the Court a particular resolution of any sentencing issue, the parties reserve the right to full allocution in any post-sentence litigation. The parties retain the full right of allocution in connection with any post-sentence motion which may be filed in this matter and/or any proceeding(s) before the Bureau of Prisons. In addition, your client acknowledges that the Government is not obligated and does not intend to file any post-sentence downward departure motion in this case pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure.

### 8.   **Court Not Bound by this Agreement or the Sentencing Guidelines**

Your client understands that the sentence in this case will be imposed in accordance with 18 U.S.C. § 3553(a), upon consideration of the Sentencing Guidelines. Your client further understands that the sentence to be imposed is a matter solely within the discretion of the Court. Your client acknowledges that the Court is not obligated to follow any recommendation of the

Government at the time of sentencing.  Your client understands that neither the Government's recommendation nor the Sentencing Guidelines are binding on the Court.

Your client acknowledges that your client's entry of a guilty plea to the charged offense authorizes the Court to impose any sentence, up to and including the statutory maximum sentence, which may be greater than the applicable Guidelines range.  The Government cannot, and does not, make any promise or representation as to what sentence your client will receive.  Moreover, it is understood that your client will have no right to withdraw your client's plea of guilty should the Court impose a sentence that is outside the Guidelines range or if the Court does not follow the Government's sentencing recommendation.  The Government and your client will be bound by this Agreement, regardless of the sentence imposed by the Court.  Any effort by your client to withdraw the guilty plea because of the length of the sentence shall constitute a breach of this Agreement.

9.    **Waivers**

A.    **Venue**

Your client waives any challenge to venue in the District of Columbia.

B.    **Statute of Limitations**

Your client agrees that, should the conviction following your client's plea of guilty pursuant to this Agreement be vacated for any reason, any prosecution, based on the conduct set forth in the attached Statement of the Offense, that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement (including any counts that the Government has agreed not to prosecute or to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against your client, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution.  It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution of conduct set forth in the attached Statement of the Offense that is not time-barred on the date that this Agreement is signed.

C.    **Trial Rights**

Your client understands that by pleading guilty in this case your client agrees to waive certain rights afforded by the Constitution of the United States and/or by statute or rule.  Your client agrees to forego the right to any further discovery or disclosures of information not already provided at the time of the entry of your client's guilty plea.  Your client also agrees to waive, among other rights, the right to be indicted by a Grand Jury**,** the right to plead not guilty, and the right to a jury trial.  If there were a jury trial, your client would have the right to be represented by counsel, to confront and cross-examine witnesses against your client, to challenge the admissibility of evidence offered against your client, to compel witnesses to appear for the purpose of testifying and presenting other evidence on your client's behalf, and to choose whether to testify.  If there were a jury trial and your client chose not to testify at that trial, your client would have the right to have the jury instructed that your client's failure to testify could

not be held against your client.  Your client would further have the right to have the jury instructed that your client is presumed innocent until proven guilty, and that the burden would be on the United States to prove your client's guilt beyond a reasonable doubt.   If your client were found guilty after a trial, your client would have the right to appeal your client's conviction. Your client understands that the Fifth Amendment to the Constitution of the United States protects your client from the use of self-incriminating statements in a criminal prosecution.  By entering a plea of guilty, your client knowingly and voluntarily waives or gives up your client's right against self-incrimination.

Your client acknowledges discussing with you Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn.  Your client knowingly and voluntarily waives the rights that arise under these rules in the event your client withdraws your client's guilty plea or withdraws from this Agreement after signing it.

Your client also agrees to waive all constitutional and statutory rights to a speedy sentence and agrees that the plea of guilty pursuant to this Agreement will be entered at a time decided upon by the parties with the concurrence of the Court.  Your client understands that the date for sentencing will be set by the Court.

### D.       Appeal Rights

Your client understands that federal law, specifically 18 U.S.C. § 3742, affords defendants the right to appeal their sentences in certain circumstances.  Your client agrees to waive the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined, except to the extent the Court sentences your client above the statutory maximum or guidelines range determined by the Court or your client claims that your client received ineffective assistance of counsel, in which case your client would have the right to appeal the illegal sentence or above-guidelines sentence or raise on appeal a claim of ineffective assistance of counsel, but not to raise on appeal other issues regarding the sentencing.  In agreeing to this waiver, your client is aware that your client's sentence has yet to be determined by the Court. Realizing the uncertainty in estimating what sentence the Court ultimately will impose, your client knowingly and willingly waives your client's right to appeal the sentence, to the extent noted above, in exchange for the concessions made by the Government in this Agreement.

### E.       Collateral Attack

Your client also waives any right to challenge the conviction entered or sentence imposed under this Agreement or otherwise attempt to modify or change the sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 or Federal Rule of Civil Procedure 60(b), except to the extent such a motion is based on newly discovered evidence or on a claim that your client received ineffective

assistance of counsel.  Your client reserves the right to file a motion brought under 18 U.S.C. § 3582(c)(2), but agrees to waive the right to appeal the denial of such a motion.

### F.    Privacy Act and FOIA Rights

Your client also agrees to waive all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including and without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, for the duration of the Office's investigation.

### 10.    Restitution

Your client understands that the Court has an obligation to determine whether, and in what amount, mandatory restitution applies in this case under 18 U.S.C. § 3663A.  The Government and your client agree that mandatory restitution does not apply in this case.

### 11.    Breach of Agreement

Your client understands and agrees that, if after entering this Agreement, your client fails specifically to perform or to fulfill completely each and every one of your client's obligations under this Agreement, or engages in any criminal activity prior to sentencing, your client will have breached this Agreement.  In the event of such a breach:  (a) the Government will be free from its obligations under this Agreement; (b) your client will not have the right to withdraw the guilty plea; (c) your client will be fully subject to criminal prosecution for any other crimes, including perjury and obstruction of justice; and (d) the Government will be free to use against your client, directly and indirectly, in any criminal or civil proceeding, all statements made by your client and any of the information or materials provided by your client, including such statements, information and materials provided pursuant to this Agreement or during the course of any debriefings conducted in anticipation of, or after entry of, this Agreement, whether or not the debriefings were previously characterized as "off-the-record" debriefings, and including your client's statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Your client understands and agrees that the Government shall be required to prove a breach of this Agreement only by a preponderance of the evidence, except where such breach is based on a violation of federal, state, or local criminal law, which the Government need prove only by probable cause in order to establish a breach of this Agreement.

Nothing in this Agreement shall be construed to permit your client to commit perjury, to make false statements or declarations, to obstruct justice, or to protect your client from prosecution for any crimes not included within this Agreement or committed by your client after the execution of this Agreement.  Your client understands and agrees that the Government reserves the right to prosecute your client for any such offenses.  Your client further understands that any perjury, false statements or declarations, or obstruction of justice relating to your client's

obligations under this Agreement shall constitute a breach of this Agreement.  In the event of such a breach, your client will not be allowed to withdraw your client's guilty plea.

### 12.    <u>Complete Agreement</u>

Other than a proffer agreement dated September 21, 2018 and continued on October 31, November 1, and November 2, 2018, no agreements, promises, understandings, or representations have been made by the parties or their counsel other than those contained in writing herein, nor will any such agreements, promises, understandings, or representations be made unless committed to writing and signed by your client, defense counsel, and the Office. The proffer agreement is superseded as noticed herein if the Agreement is breached.

Your client further understands that this Agreement is binding only upon the Office.  This Agreement does not bind any other United States Attorney's Office, nor does it bind any other state, local, or federal prosecutor.  It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against your client.

If the foregoing terms and conditions are satisfactory, your client may so indicate by signing this Agreement and the Statement of the Offense, and returning both to me no later than November __, 2018.

Sincerely yours,

ROBERT S. MUELLER, III
Special Counsel


By:    _____
Jeannie S. Rhee
Andrew D. Goldstein
Aaron S.J. Zelinsky
L. Rush Atkinson, V
The Special Counsel's Office

## DEFENDANT'S ACCEPTANCE

I have read every page of this Agreement and have discussed it with my attorney, David E. Gray.  I fully understand this Agreement and agree to it without reservation.  I do this voluntarily and of my own free will, intending to be legally bound.  No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully.  I am pleading guilty because I am in fact guilty of the offense identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement.  I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.


Date:_____           _____
                                     Jerome Corsi
                                     Defendant


## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Agreement, reviewed this Agreement with my client, Jerome Corsi, and fully discussed the provisions of this Agreement with my client.  These pages accurately and completely set forth the entire Agreement.  I concur in my client's desire to plead guilty as set forth in this Agreement.


Date: _____          _____
                                     David E. Gray, Esq.
                                     Attorney for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: |
| v. | Violation: 18 U.S.C. § 1001(a)(2) (False Statements) |
| JEROME CORSI, | |
| Defendant. | |

## **STATEMENT OF THE OFFENSE**

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America and the defendant, JEROME CORSI, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1.      On or about September 6, 2018, the defendant, JEROME CORSI, was interviewed voluntarily by the Special Counsel's Office, including Department of Justice prosecutors and Special Agents of the Federal Bureau of Investigation.  At the time of the interview, the Special Counsel's Office was investigating the Russian government's efforts to interfere in the 2016 presidential election, including:

      a.  the theft of campaign-related emails and other documents by the Russian government's Main Intelligence Directorate of the General Staff ("GRU");

      b.  the GRU's provision of certain of those documents to an organization ("Organization 1") for public release in order to expand the GRU's interference in the 2016 U.S. presidential election campaign; and

        c.  the nature of any connections between individuals associated with the U.S. presidential campaign of Donald J. Trump ("Trump Campaign") and the Russian government or Organization 1.

2.     CORSI was represented by counsel during the September 6, 2018 interview.  At the outset of the interview, CORSI was warned that intentionally making false statements to the investigators was a violation of federal law.  CORSI said that he understood.

3.     During the interview, CORSI said that in the summer of 2016 an associate ("Person 1") who CORSI understood to be in regular contact with senior members of the Trump Campaign, including with then-candidate Donald J. Trump, asked CORSI to get in touch with Organization 1 about materials it possessed relevant to the presidential campaign that had not already been released.  CORSI thereafter knowingly and intentionally made the following materially false statements during the interview:

        a.  CORSI said he declined the request from Person 1 and made clear to Person 1 that trying to contact Organization 1 could be subject to investigation.  CORSI also stated that Person 1 never asked CORSI to have another person try to get in contact with Organization 1, and that CORSI told Person 1 that they should just wait until Organization 1 released any materials.

        b.  CORSI further stated that after that initial request from Person 1, CORSI did not know what Person 1 did with respect to Organization 1, and he never provided Person 1 with any information regarding Organization 1, including what materials Organization 1 possessed or what Organization 1 might do with those materials.

4.      In truth and in fact, and as CORSI well knew, after Person 1 asked CORSI to get in touch with Organization 1, CORSI did not decline the request as he stated in the interview.  Instead, CORSI contacted an individual who resided in London, England ("overseas individual") to pass on Person 1's request to learn about materials in Organization 1's possession that could be relevant to the presidential campaign.  Corsi thereafter told Person 1 that Organization 1 possessed information that would be damaging to then-candidate Hillary Clinton and that Organization 1 planned to release damaging information in October 2016.

> a.  On or about July 25, 2016, Person 1 sent an email to CORSI with the subject line, "Get to [the founder of Organization 1]."  The body of the message read: "Get to [the founder of Organization 1] [a]t Ecuadorian Embassy in London and get the pending [Organization 1] emails . . . they deal with Foundation, allegedly."  On or about the same day, CORSI forwarded Person 1's email to the overseas individual.

> b.  On or about July 31, 2016, Person 1 emailed CORSI with the subject line, "Call me MON."  The body of the email read in part that the overseas individual "should see [the founder of Organization 1]."

> c.  On or about August 2, 2016, CORSI responded to Person 1 by email.  CORSI wrote that he was currently in Europe and planned to return in mid-August.  CORSI stated:  "Word is friend in embassy plans 2 more dumps.  One shortly after I'm back.  2nd in Oct.  Impact planned to be very damaging.… Time to let more than [the Clinton Campaign chairman] to be exposed as in bed w enemy if they are not ready to drop HRC [Hillary Rodham Clinton].  That appears to be the game hackers

are now about.  Would not hurt to start suggesting HRC old, memory bad, has stroke -- neither he nor she well.  I expect that much of next dump focus, setting stage for Foundation debacle."

5.      Between approximately January 13, 2017 and March 1, 2017,  CORSI deleted from his computer all email correspondence that predated October 11, 2016, including Person 1's email instructing CORSI to "get to [the founder of Organization 1]" and CORSI's subsequent forwarding of that email to the overseas individual.

6.      After the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI"), the U.S. Senate Select Committee on Intelligence ("SSCI"), and the Federal Bureau of Investigation ("FBI") began inquiring in 2017 about Person 1's connections with Organization 1, CORSI communicated with Person 1 about developments in those investigations.  For example, on or about November 28, 2017, after Person 1 had identified to HPSCI a certain individual ("Person 2") as his "source" or "intermediary" to Organization 1, Person 2 received a subpoena compelling his testimony before HPSCI, and Person 1 learned of the subpoena.  On or about November 30, 2017, Person 1 asked CORSI to write publicly about Person 2. CORSI responded: "Are you sure you want to make something out of this now?  Why not wait to see what [Person 2] does?  You may be defending yourself too much – raising new questions that will fuel new inquiries.  This may be a time to say less, not more."  Person 1 responded by telling CORSI that the other individual "will take the 5th—but let's hold a day."

7.      Following his September 10, 2018 interview, CORSI met with the Special Counsel's Office for several additional interviews and voluntarily provided access to his email accounts and electronic devices.  CORSI made numerous claims during these interviews, including

4

that his representations to Person 1, beginning in August 2016, that he had a way of obtaining

confidential information from Organization 1, were false.

ROBERT S. MUELLER, III
Special Counsel


By: _____
Jeannie S. Rhee
Andrew D. Goldstein
Aaron S.J. Zelinsky
L. Rush Atkinson, V
The Special Counsel's Office

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

I have read every word of this Statement of the Offense, or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.


Date:_____          _____
                                    Jerome Corsi
                                    Defendant


## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.


Date: _____          _____
                                    David E. Gray, Esq.
                                    Attorney for Defendant