IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. JEROME CORSI

        Plaintiff

   v.

ROGER STONE

        Defendant.

Case Number:   1:19-cv-324

## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs Jerome Corsi ("Plaintiff") hereby notify the Court of supplemental legal authority that conclusively shows that Defendants are subject to personal jurisdiction in the District of Columbia in this case. These cases are: (1) *Lewy v. Southern Poverty Law Center, Inc.*, 723 F. Supp. 2d 116 (D.D.C. 2010) and (2) *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998).

### *Lewy v. Southern Poverty Law Center*

In *Lewy*, this same Court found that Southern Poverty Law Center ("SPLC") was subject to personal jurisdiction in the District of Columbia. 723 F. Supp. 2d at 129. In analyzing SPLC's connections with the District of Columbia, the Court made the following findings that mirror the instant case: SPLC is a non-profit corporation residing in Alabama, but it operates a website that is accessible to D.C. residents. *Id*. at 120. Visitors to SPLC's website can "enter their email address and subscribe to the organization's newsletters." *Id*. Visitors to the SPLC website were able to make a donation to the SPLC and comment or post on its weblog. *Id*. In the year 2008, SPLC received "$29,118 in online donations from 133 different donors based in the District of Columbia." *Id*. SPLC also distributes publications to individuals in the District of Columbia. *Id*.

at 121. Lastly, SPLC monitors hate groups in the District of Columbia and solicits information from District of Columbia sources in preparing articles for publication. *Id*.

The Court summed up its findings that SPLC had maintained a "persistent course of conduct" in the District of Columbia – adequate to confer personal jurisdiction – by "(1) maintaining an interactive website available to D.C. residents 24 hours per day through which residents can sign up for information and donate to SPLC; (2) distributing its *Teaching Tolerance* and *Intelligence Report* magazines to D.C. residents through the mail; (3) soliciting and receiving millions of dollars in donations from D.C. residents by mail, phone, and over the internet; (4) sending its employees to the District for training sessions and conferences; (5) monitoring hate groups in the District of Columbia; and (6) gathering information from sources in the District of Columbia for its publications." *Id*. at 126.

### *Blumenthal v. Drudge*

This same Court also found that it had personal jurisdiction over Matt Drudge, a California resident who maintained the Drudge Report, a gossip column focusing on gossip from Hollywood and Washington D.C. *Blumenthal*, 992 F. Supp. 44 at 46 – 47. *Blumenthal* appears to be somewhat of a landmark case in this arena, given the fact that it was decided in the early days of the internet, and it was cited extensively by the Honorable Colleen Kollar-Kotelly in her decision in *Lewy* from twelve years later.

The *Blumenthal* Court ultimately found that it had personal jurisdiction over Drudge based on six factors, which closely resemble the factors used by the *Lewy* court: "1) the interactivity of the web site between the defendant Drudge and District residents; (2) the regular distribution of the Drudge Report via AOL, e-mail and the world wide web to District residents; (3) Drudge's solicitation and receipt of contributions from District residents; (4) the availability

of the web site to District residents 24 hours a day; (5) defendant Drudge's interview with C-SPAN; and (6) defendant Drudge's contacts with District residents who provide gossip for the Drudge Report." *Id.* at 57.

### *Facts Applied to This Case*

The facts here are incredibly analogous to both *Lewy* and *Blumenthal*, and based on those cases, Defendant Stone must be subject to personal jurisdiction here as well.

*First*, Defendant Stone's website, www.stonecoldtruth.com, is also clearly not a passive site, and is extremely interactive between Defendant Stone and its visitors. At the bottom of each article is a space for users to enter comments. Even more, users are able to contact Defendants directly, through their contact page.[1]

*Second*, Defendant Stone clearly distributes it content to residents of the District of Columbia on a regular basis. It is inconceivable that a significant portion of Defendant Stone's website readers are not residents of the District of Columbia, especially given the fact that Defendant Stone is a longtime Washington D.C. lobbyist and strategist, whose business and livelihood is centered in this judicial district, as set forth in full in its complaint

*Third*, Defendant Stone also solicits contributions and donations online, through the site www.stonedefensefund.com allowing its users to donate directly online. Defendant Stone also operates an extensive online store that allows for its followers to give it financial support[2]. Again, it is inconceivable that a significant portion of Defendant Stone's donors and buyers are not residents of the District of Columbia, especially given the fact that Defendant Stone is a longtime Washington D.C. lobbyist and strategist, whose business and livelihood is centered in this judicial district, as set forth in full in its complaint. At a minimum, this issue must proceed to

---

[1] https://stonecoldtruth.com/contact/
[2] https://stonecoldtruth.com/shop/

discovery. Furthermore, as he has been indicted in this judicial district by Special Counsel Robert Mueller, he is clearly seeking to raise money in this judicial district to help pay for his legal defense.

*Fourth*, similar *Blumenthal*, the Defendant Stone's websites are also available to District of Columbia residents 24 hours a day.

*Fifth*, given Defendant Stone's career as a Washington D.C. lobbyist and strategist, who even served on President Trump's campaign team at one point, it is abundantly clear that Defendant Stone must travel extensively to and from the District of Columbia.

*Sixth*, Defendant Stone's website bears a close resemblance to both SPLC and Drudge, as they are heavily reliant on American politics to generate views and users, and thus money. Thus, Defendant Stone will also need to have extensive contacts in this judicial district that they use to source their material, as found by both the *Lewy* and *Blumenthal* courts. This will also be uncovered in discovery.

### *Conclusion*

Based on the above cases, which both bear a shockingly close resemblance to the instant case, it is clear that this Court is able to exercise personal jurisdiction over Defendant Stone here. At a minimum, Plaintiff must be permitted to conduct personal jurisdiction discovery to confirm what the parties and this Court must already know – that Defendant Stone has engaged in a "persistent course of conduct" in this judicial district.

Dated: October 25, 2019                                          Respectfully submitted,

                                                                  */s/ Larry Klayman*
                                                                 Larry Klayman, Esq.
                                                                 KLAYMAN LAW GROUP, P.A.

D.C.  Bar Number: 334581
2020 Pennsylvania Ave NW #800
Washington, DC, 20006
Telephone: (561)-558-5336
Email: leklayman@gmail.com

*Counsel for Plaintiffs Corsi and Klayman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed October 25, 2019 and served to all counsel of record through the Court's ECF system.

/s/ Larry Klayman
Attorney